ORIGINAL

1  HARRIS I. STEINBERG (Bar No. 89288)
   LEVINE, STEINBERG, MILLER & HUVER
2  550 W. "C" Street, Suite 1810
   San Diego, California 92101
3  Phone:(619) 231-9449
   Fax: (619)231-8638
4

5  Attorneys for Plaintiff

6

7

FILED

08 MAR 12  PM 12: 23

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY:                        DEPUTY

8                    IN THE UNITED STATES DISTRICT COURT

9                FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10  EDWARD L. SCHECHTER,              )  CASE NO.
                                      )
11            Plaintiff,              )  '08 CV 459   WQH LSP
                                      )
                                      )  COMPLAINT FOR TORTIOUS BREACH
12  v.                                )  OF INSURANCE CONTRACT AND
                                      )  DEMAND FOR JURY TRIAL .
13  UNUM LIFE INSURANCE COMPANY OF    )
    AMERICA and DOES 1 - 10,          )  (Compensatory and Punitive
14                                    )  Damages)
              Defendants.             )
15                                    )  1.    Breach of Duty of Fair
                                      )        Dealing and Good Faith
16                                    )
                                      )  2.    Declaratory Relief
17                                    )
                                      )
18  _____ )

19      PLAINTIFF, EDWARD L. SCHECHTER, FOR A FIRST CAUSE OF ACTION

20      AGAINST DEFENDANT UNUM LIFE INSURANCE COMPANY OF AMERICA

21      (hereinafter UNUM) ONLY FOR BREACH OF THE DUTY OF GOOD FAITH

22                     AND FAIR DEALING, ALLEGES:

23       1.    At all times herein noted plaintiff was and is a resident of San Diego and a citizen

24  of the State of California.

25       2.    At all times herein noted, defendant UNUM was a corporation with its principal

26  place of business in the State of Maine and incorporated in the State of Delaware.

27       3.    The present controversy involves diversity of citizenship and a claim in excess of

28  $75,000, making jurisdiction appropriate under 28 USC §1441.

1    4.    That the true names or capacities, whether individual, corporate, associate, or

2    otherwise, of defendants Does 1 through 10, inclusive, are unknown to plaintiff, who therefore

3    sues said defendants by such fictitious names.  Plaintiff is informed and believes and therefore

4    alleges that each of the defendants designated herein as Doe is legally responsible in some manner

5    for the events and happenings herein referred to, and legally caused injury and damages

6    proximately thereby to plaintiff as herein alleged.  Plaintiff is informed and believes and thereon

7    alleges that Does 1 through 10 are residents and citizens of the State of California, and made

8    representations and promises to plaintiff during the sale of the disability policy which is the

9    subject matter of this action.  Plaintiff is informed and believes and thereon alleges that Does 1 -

10   10 are residents and citizens of the State of California and participated in processing plaintiff's

11   claim for benefits under the disability policies which are the subject matter of this action.

12   5.    That at all times herein mentioned, defendants, and each of them, were the agents

13   and employees of each of the remaining defendants, and were at all times acting within the

14   purpose and scope of said agency and employment, and each defendant has ratified and approved

15   the acts of his agent.

16   6.    On or about March 28, 1976 and November 7, 1983, defendant UNUM issued

17   disability policy number LAD 075787 and a series of addenadums increasing the benefit

18   (CLA95033, 952034, 952035, 95036 and 95037 to plaintiff.  A copy of said policy is  marked as

19   Exhibit "A", attached hereto, and incorporated herein by reference.  Said policy was entered into

20   by plaintiff within the jurisdiction of the above-entitled court and required the payment of benefits

21   within the jurisdiction of the above-entitled court for a total amount to be shown at the time of

22   trial.

23   7.    Plaintiff has paid all premiums due under said policy to defendant UNUM at all

24   relevant times herein and has performed all obligations under said policy on plaintiff's part to be

25   performed.

26   8.    On or about April 1994, while plaintiff was under the age of 55 he suffered a loss

27   compensable under the terms of said policy in that plaintiff suffered from a meningioma that

28

1    caused tremors in his hands, fullness in his head, depression, a loss of visual field, reduced

2    cognitive ability and memory loss which caused him to undergo brain surgery.

3        9.    Plaintiff's medical condition in April of 1994 caused him to be totally disabled

4    while under the age of 55. The same medical condition continues to cause total disability from

5    plaintiff's own occupation presently.

6        10.    On or about July 1994, plaintiff filed a claim for disability under said policy due to

7    his physical problems, which prevented him from continuing to work in his regular occupational

8    specialty as an optholmic surgeon.

9        11.    Defendant UNUM has breached its duty of good faith and fair dealing owed to

10   plaintiff in the following respects:

11       (A)    Defendant UNUM acknowledged and agreed that Dr. Schechter was in fact totally

12   disabled and could not engage in his specialty on a regular and continuous basis. Defendant

13   UNUM initiated payment of total disability benefits in 1994 and to this date continues to pay

14   plaintiff's total disability claim on other similar policies. However, defendant ceased and

15   terminated payments on the coverage which is the subject of this action, contending that plaintiff

16   was not disabled as of his 55th birth date/anniversary date under defendant's policies which

17   defendant calculates to be March 28, 1995. The subject coverage provides for lifetime benefits if

18   the sickness and total disability began before the age 55 policy anniversary, namely March 28,

19   1995. Plaintiff was totally disabled before March 28, 1995 and continued to be totally disabled

20   thereafter, including a brief but failed attempt to return to work.

21       (B)    Defendant has acknowledged and agreed that Dr. Schechter was totally disabled in

22   1994 when Dr. Schechter was age 54, and that he was and remains totally disabled since at least

23   August 2, 1995. Defendant claims Dr. Schechter was not disabled as of March 28, 1995 because

24   he attempted to engage in the practice of optholmic surgery in and around March 28 1995.

25       (C)    Defendant was at all times aware that California adopts and follows the "process of

26   nature" rule on disability claims pursuant to the decision in McMackin v. Great American Reserve

27   Ins. Co. (1971) 22 Cal.App.3d 428, 99 Cal.Rptr. 227, which holds that an insured's failed

28   attempts to return to work should not be used to penalize or form a basis to deny benefits if the

-3-

1 insured ultimately fails in his attempt to return to work with the disability. Despite defendant's

2 knowledge of the process of nature rule and its application in California, defendant refused to

3 consider the rule or apply it to plaintiff's claim.

4     (D)     At no time did defendant inform plaintiff of the "process of nature rule" or its

5 potential application to his claim. Instead, defendant terminated payment on the subject policies

6 when plaintiff reached the 65th anniversary date in the policies and advised him that lifetime

7 benefits could not be paid because of his attempt to return to work after the 1994 brain surgery

8 that had totally disabled him in 1994.

9     (E)     Defendant was at all times aware that plaintiff's acknowledged total disability as of

10 August 2, 1995 was based on the same 1994 brain tumor and 1994 surgery and its after effects

11 that had totally disabled him in 1994.

12     (F)     Defendant was at all times aware that plaintiff never fully recovered from the 1994

13 brain tumor or surgery and that his attempts to return to work on a regular and continuous basis

14 failed because of the ongoing medical problems and disability which began in 1994, before

15 plaintiff reached the 55th anniversary date of defendant's policies.

16     (G)     Misrepresenting to plaintiff pertinent facts and policy provisions in relation to the

17 coverage in issue in regard to plaintiff's date of disability.

18     (H)     Not attempting in good faith to effectuate a prompt, fair and equitable settlement of

19 plaintiff's claim for disability benefits in which liability has become reasonably clear.

20     (I)     Plaintiff is informed and believes and thereon alleges that defendant UNUM has

21 breached its duty of fair dealing and good faith owed to plaintiff by other acts or omissions of

22 which plaintiff is presently unaware. Plaintiff will seek leave of court to amend this complaint at

23 such time as plaintiff discovers the other acts or omissions of said defendant constituting such

24 breach.

25     12.     As a proximate result of the aforementioned wrongful conduct of defendants,

26 plaintiff has suffered, and will continue to suffer in the future, damages under said policies plus

27 interest for a total amount to be shown at the time of trial.

28

-4-

13.     As a further proximate result of the aforementioned wrongful conduct of defendants, plaintiff has suffered anxiety, worry, mental and emotional distress, and other incidental damages and out of pocket expenses, including attorney fees, all to plaintiff's damage in a sum to be determined at time of trial, but in any event a sum in excess of the jurisdictional requirements of the above-entitled court.

14.     Defendants' despicable conduct described herein was done with a conscious disregard of plaintiff's rights and with the intent to vex, injure or annoy plaintiff, such as to constitute oppression, fraud or malice under California Civil Code §3294, entitling plaintiff to punitive damages in an amount appropriate to punish or set an example of defendants.

15.     Furthermore, defendants' despicable conduct described herein was done with a conscious disregard of plaintiff's rights and with the intent to vex, injure or annoy plaintiff, thereby entitling plaintiff to prejudgment interest on all sums awarded at time of trial in an amount to be determined in accordance with California Civil Code §3291.

**PLAINTIFF, EDWARD L. SCHECHTER, FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANT, UNUM LIFE INSURANCE COMPANY OF AMERICA, AND DOES 1 THROUGH 10, INCLUSIVE, IN DECLARATORY RELIEF, ALLEGES:**

16.     Plaintiff refers to paragraphs 1 through 13, inclusive, of the First Cause of Action and incorporates those paragraphs as though set forth in full in this cause of action.

17.     Pursuant to the terms of the insurance policy in question, plaintiff contends that he was and remains totally disabled and entitled to monthly disability benefits for the duration of his life. Plaintiff has submitted all necessary documents and claim forms required in order to support his claim.

18.     An actual controversy exists between plaintiff on the one hand and UNUM on the other in that plaintiff contends that he was at all times and continues to be disabled. Defendant, on the other hand, has terminated plaintiff's disability payments claiming plaintiff's attempt to return to work in 1995 disqualifies plaintiff's claim for lifetime benefits.

-5-

19. Plaintiff requests a judicial declaration of the rights of both parties pursuant to the terms and conditions of the insurance policy in question, and further requests a judicial declaration that plaintiff is entitled to benefits under the terms of the insurance policy in question.

WHEREFORE, plaintiff prays for judgment against defendants, and each of them as follows:

1. Damages for failure to provide benefits under the disability policy in a sum to be determined at the time of trial;

2. General damages for mental and emotional distress and other incidental damages in a sum to be determined at the time of trial;

3. Punitive and exemplary damages in an amount appropriate to punish or set as example of defendants;

4. Prejudgment interest on all damages awarded to plaintiff in an amount to be determined in accordance with California Civil Code §3291;

5. For attorney's fees and costs of suit incurred herein;

6. A judicial declaration that plaintiff is entitled to benefits under the terms of the insurance policy in question; and

7. For such other and further relief as the Court deems just and proper.

PLAINTIFF DEMANDS A JURY TRIAL.

DATED: March 10, 2008                         LEVINE, STEINBERG, MILLER & HUVER

By: _____
      HARRIS I. STEINBERG
      Attorneys for Plaintiff

-6-

Legal Tabs Co. 1-800-322-3022

Recycled    Stock # EXA-5-B

**EXHIBIT A**

Insured  EDWARD L SCHECHTER MD                    03-28-1976   Policy Date


Policy Number   LAD075787                         07-17-1989   Effective Date

## DISABILITY INCOME POLICY
### NONCANCELLABLE TO AGE 65 AT GUARANTEED PREMIUM RATE
### THEREAFTER UNTIL AGE 75, RENEWABLE ON EACH POLICY ANNIVERSARY ON WHICH
### THE INSURED IS EMPLOYED AT LEAST 30 HOURS PER WEEK
### AFTER AGE 65, PREMIUM RATE IS BASED ON THE INSURED'S AGE ON EACH RENEWAL DATE


This policy provides disability income benefits under stated conditions.  Please refer to the policy provisions where we tell you when and how we will pay benefits.  You will find an index of these provisions on Page 2.

### TWENTY DAY RIGHT TO EXAMINE POLICY

Within 20 days after this policy is delivered to you or your representative, you may cancel the policy for any reason.  To cancel this policy, you or your representative must mail or deliver the policy to our Home Office or to one of our authorized representatives.  If this is done, the policy will be cancelled from the beginning and all of the premium paid will be refunded.


### RENEWAL

You may renew this policy on each policy anniversary until the policy anniversary when the Insured's age is 65 by paying each premium before its Grace Period ends.  Beginning with the policy anniversary when his age is 65, you may renew this policy until the policy anniversary when his age is 75 by paying the appropriate premium on each premium due date on which he is employed in a regular occupation at least 30 hours a week.

This policy becomes effective on the Effective Date shown on page 3.


*Kevin J. Turney*                              *Jerry F. Ahn III*

Secretary                                        President




## UNUM Life Insurance Company of America
A Stock Insurance Company        Home Office: Portland, Maine


EP87                 Copyright 1986 UNUM Life Insurance Company of America

EXHIBIT A

# Index of Policy Provisions

1       **Twenty Day Right to Examine Policy**

1       **Renewal**

3       **Policy Schedule**

4       **Endorsements** (if any)

5       **Premiums**

5       **Reinstatement**

6       **Definitions**

7       **Benefits**
            Disability Benefit.
8           Monthly Benefit Amount.
            Benefit for Loss of Use.
            Successive Disabilities.
            Waiver of Premium.
            Benefit Indexing Provision.
9           Indexed Amount.
            Transplant Donor Benefit.
            Rehabilitation.

9       **Exclusions and Limitations**
            Preexisting Condition Limitation.
            Multiple Benefits.

9       **Claim Information**
            How to File a Claim.
10          Conditions and Time Limits.
            How and When We Pay Benefits.

10      **Change of Plan Provision**

11      **General Provisions**
            The Contract.
            Incontestable.
            Conformity with State Statutes.
            Legal Actions.
            Misstatement of Age.
            Owner.
            Loss Payee.
            Assignment.

Application and any riders follow page 11.

**POLICY SCHEDULE**

Insured   EDWARD L SCHECHTER MD

Policy Number   LAD075787

03-28-1976   Policy Date

07-17-1989   Effective Date

### Summary of Premium*

The premium mode at issue is SEMIANNUAL
Premiums are payable as follows

| Beginning | Annual | Semiannual | Quarterly |
|---|---|---|---|
| 08-21-1989 | $5,016.45 | $2,558.40 | $1,304.26 |
| 03-28-1995 | $4,687.10 | $2,390.43 | $1,218.63 |
| 03-28-2005 | COMPANY RATES THEN IN EFFECT | | |

As long as the FlexBill group meets all FlexBill requirements or until this policy is removed from FlexBilling, premium is payable as follows in lieu of the premium specified above.

| Beginning | Annual | Semiannual | Quarterly |
|---|---|---|---|
| 08-21-1989 | $4,514.82 | $2,302.54 | $1,173.84 |
| 03-28-1995 | $4,218.40 | $2,151.37 | $1,096.77 |
| 03-28-2005 | COMPANY RATES THEN IN EFFECT | | |

* Premium Guaranteed to age 65.

### Summary of Coverage - Group 01

Form-   EP87   - EXECUTIVE PROFESSIONAL

Elimination Period-   90  Days

Maximum Benefit Period-TO THE LATER OF (A) AGE 65 POLICY ANNIVERSARY OR
(B) 24 MONTHS AFTER DISABILITY PAYMENTS BEGIN

| | Effective Date | Benefit Amount | Annual Premium | Premium Cease Date |
|---|---|---|---|---|
| | 08-21-1989 | $1,000 | $411.60 | 03-28-2005 |
| | | THEN COMPANY RATES THEN | | IN EFFECT |

| Rider Form | Description | Rider Date | Benefit Amount | Annual Premium | Premium Cease Date |
|---|---|---|---|---|---|
| LA86 | Lifetime Monthly Accident Benefit For Total Disability Maximum Benefit Period-Lifetime | 08-21-1989 | $1,000 | $24.40 | 03-28-2005 |
| NDI86 | Nondisabling Injury Benefit | 08-21-1989 | $2,500 | $15.00 | 03-28-2005 |

| Rider Form | Description | Rider Date | Benefit Amount | Annual Premium | Premium Cease Date |
|---|---|---|---|---|---|
| CLS86 | Cost of Living Adjustment Rider Maximum COLA Percentage . . . . . . . . .   4% COLA Increase Percentage . . . . . . . . .   0% | 08-21-1989 | See Rider | $64.00 | 03-28-2005 |

### Summary of Coverage - Group 02

Form-  EP87  – EXECUTIVE PROFESSIONAL

Elimination Period-  90  Days

Maximum Benefit Period-TO THE LATER OF (A) AGE 65 POLICY ANNIVERSARY OR (B) 24 MONTHS AFTER DISABILITY PAYMENTS BEGIN

| Effective Date | Benefit Amount | Annual Premium | Premium Cease Date |
|---|---|---|---|
| 08-21-1989 | $1,500 | $690.90 | 03-28-2005 |
| | THEN COMPANY RATES THEN IN EFFECT | | |

| Rider Form | Description | Rider Date | Benefit Amount | Annual Premium | Premium Cease Date |
|---|---|---|---|---|---|
| LA86 | Lifetime Monthly Accident Benefit For Total Disability Maximum Benefit Period- Lifetime | 08-21-1989 | $1,500 | $41.55 | 03-28-2005 |
| CLS86 | Cost of Living Adjustment Rider Maximum COLA Percentage . . . . . . . . .   4% COLA Increase Percentage . . . . . . . . .   0% | 09-27-1989 | See Rider | $102.60 | 03-28-2005 |

### Summary of Coverage - Group 03

Form-  .P87  – EXECUTIVE PROFESSIONAL

Elimination Period-  90  Days

Maximum Benefit Period-TO THE LATER OF (A) AGE 65 POLICY ANNIVERSARY OR (B) 24 MONTHS AFTER DISABILITY PAYMENTS BEGIN

| Effective Date | Benefit Amount | Annual Premium | Premium Cease Date |
|---|---|---|---|
| 08-21-1989 | $2,500 | $973.50 | 03-28-2005 |
| | THEN COMPANY RATES THEN IN EFFECT | | |

Policy Schedule, Page 3, Continued

| Rider Form | Description | Rider Date | Benefit Amount | Annual Premium | Premium Cease Date |
|---|---|---|---|---|---|
| LA86 | Lifetime Monthly Accident Benefit For Total Disability Maximum Benefit Period- Lifetime | 08-21-1989 | $2,500 | $56.50 | 03-28-2005 |
| CLS86 | Cost of Living Adjustment Rider Maximum COLA Percentage . . . . . . . . . 4% COLA Increase Percentage . . . . . . . . 0% | 09-27-1989 | See Rider | $171.00 | 03-28-2005 |

### Summary of Coverage - Group 04

Form-            EP87      - EXECUTIVE PROFESSIONAL

Elimination Period-      90   Days

Maximum Benefit Period-TO THE LATER OF (A) AGE 65 POLICY ANNIVERSARY OR
(B) 24 MONTHS AFTER DISABILITY PAYMENTS BEGIN

| | Effective Date | Benefit Amount | Annual Premium | Premium Cease Date |
|---|---|---|---|---|
| | 08-21-1989 | $3,500 | $1,789.90 | 03-28-2005 |
| | | THEN COMPANY | RATES THEN | IN EFFECT |

| Rider Form | Description | Rider Date | Benefit Amount | Annual Premium | Premium Cease Date |
|---|---|---|---|---|---|
| LA86 | Lifetime Monthly Accident Benefit For Total Disability Maximum Benefit Period- Lifetime | 08-21-1989 | $3,500 | $116.55 | 03-28-2005 |
| LS5586 | Lifetime Monthly Sickness Benefit For Total Disability Maximum Benefit Period- For sickness before age 55 Policy Anniversary - Lifetime | 08-21-1989 | $3,500 | $259.35 | 03-28-1995 |
| CLS86 | Cost of Living Adjustment Rider Maximum COLA Percentage . . . . . . . . . 4% COLA Increase Percentage . . . . . . . . 0% | 08-21-1989 | See Rider THEN | $299.60 $229.60 | 03-28-1995 03-28-2005 |

Rider Premiums for the Premium Term are included in the Summary of Premium.

**UNUM LIFE INSURANCE COMPANY OF AMERICA**

**ENDORSEMENTS**
**(Endorsements may be made only by the Company at its Home Office.)**

The Incontestable provision of this policy is hereby amended to provide that each exchanged coverage will be incontestable from the effective date of the coverage it replaces and the company's liability will be calculated from that date. Any new coverage will be contestable from its coverage effective date.

Signed for us at our Home Office.

*Kevin J. Tierney*

Secretary

## PREMIUMS

All premiums except the first premium are due on or before the due date. They are payable as stated on page 3.

Each premium will keep this policy in effect and continue coverage for the term shown.

As long as all premiums are paid before the end of their Grace Period, we will not increase the premium rate for this policy before the policy anniversary when the Insured's age is 65. On and after the policy anniversary when his age is 65, the premium is the rate then in effect for his age on each policy anniversary.

The Grace Period is the 31 consecutive days that begin with the day a premium is due. We will keep this policy in effect and continue coverage during that time. If the premium is not paid during those 31 days, this policy and all coverage under this policy will terminate.

If we accept premium after the policy anniversary when the Insured's age is 65, we will keep this policy in effect and continue coverage until the end of the period for which we accept it.

If any premium is paid beyond the month in which the Insured dies or this policy terminates for some other reason, we will refund the amount of the unearned premium paid.

Premiums must be paid in United States dollars.

## REINSTATEMENT

If this policy terminates because a premium is not paid by the end of the Grace Period, you may apply to reinstate this policy at any time until the first unpaid premium is six months overdue.

In order to reinstate this policy, two requirements must be met. They are:

1. a reinstatement application must be completed (to complete a reinstatement application means you submit the reinstatement application with evidence of the Insured's insurability and the full amount of overdue premium); and

2. we approve the reinstatement application.

A reinstatement application must be prepaid, and we will issue a prepayment agreement. The date of the prepayment agreement will be the date the reinstatement application has been completed.

If we approve the reinstatement application, this policy will be reinstated on the approval date. If the overdue premium is paid without submitting a reinstatement application and we keep the pre-mium without requesting a reinstatement application within a reasonable time, this policy will be reinstated the date we receive the premium. If we issue a prepayment agreement and do not approve or disapprove the reinstatement application within 45 days from the date of the prepayment agreement, this policy will be reinstated on that 45th day.

If this policy is reinstated, it will only cover:

1. injury that occurs on or after the date this policy is reinstated; or

2. sickness which is first diagnosed or is first treated more than 10 days after this policy is reinstated.

It WILL NOT cover:

1. any injury or sickness which is excluded by name or description; and

2. any preexisting condition excluded by the reinstatement application.

## DEFINITIONS

"Policy" means the contract of insurance between you and us. This form, all applications, and any riders, endorsements, or amendments that are attached to it make up the entire contract.

"Coverage" means a type or amount of benefit provided by this policy. Each benefit, each modification of that benefit for which we require evidence of insurability, and each reinstatement of that benefit is a separate coverage. For purposes of the Incontestable provision, an increase provided by the Benefit Indexing Provision is part of the coverage that was indexed unless evidence of insurability is required for that increase.

"You" and "your" refer to the owner of this policy. The owner is the Insured unless ownership rights have been assigned.

"We," "our" and "us" refer to UNUM Life Insurance Company of America.

"Insured" means the person named on page 3. It is the person whom we are insuring. The Insured can not be changed.

"Injury" means bodily harm caused by an accident.

"Sickness" means a mental or physical illness or condition which has been diagnosed or treated.

"To work full time in his regular occupation" means the Insured works approximately the same number of hours in the same regular occupation as he was working before disability began.

"Maximum Disability Benefit" means the amount shown on page 3.

"Maximum Benefit Period" means the period shown on page 3.

"Disability" and "disabled" mean the period while the Insured is satisfying the Elimination Period, or while the Disability Benefit or the Loss of Use Benefit is payable.

"Elimination Period" means the number of days stated on page 3, preceding the date benefits become payable (other than the Loss of Use Benefit), during which injury or sickness impairs the Insured.

The Elimination Period begins on the first day that the Insured is impaired.

Different Elimination Periods may apply to different coverages under this policy. The Elimination Period for each coverage is described on page 3.

If the impairment ceases before the Insured satisfies the Elimination Period and he becomes impaired again from the same cause within 6 months, we will combine those impairments to determine when benefits begin.

"Impairment," "impairs" and "impaired" mean: (1) injury or sickness totally or residually disables the Insured; and (2) the Insured is receiving medical care from someone other than himself which is appropriate for the injury or sickness.

"Total disability" and "totally disabled" mean injury or sickness restricts the Insured's ability to perform the material and substantial duties of his regular occupation to an extent that prevents him from engaging in his regular occupation.

"Residual disability" and "residually disabled" mean injury or sickness does not prevent the Insured from engaging in his regular occupation, BUT does restrict his ability to perform the material and substantial duties of his regular occupation: (i) for as long a time as he customarily performed them before the injury or sickness; or (ii) as effectively as he customarily performed them before the injury or sickness.

"Net income" means all payments received by the Insured for duties that he performs in his regular occupation minus his share of the usual and customary business expenses which he or his company incurs on a regular basis and are essential to the operation of the business.

"Prior net income" means the largest of: (1) the Insured's average monthly net income for the last 12 months before the Elimination Period began; (2) the Insured's average monthly net income for the 12-month period immediately before those 12 months; or (3) the highest average monthly net income for any two consecutive years of the last 5 years before the Elimination Period began. On each anniversary of the first day of a period of disability, we will calculate a CPI-U Factor. We will multiply the prior net income by that Factor. Then we will use that amount to calculate the Maximum Disability Benefit.

"Loss of net income" means the Insured's indexed prior net income minus the net income he received for the month to which a payment relates.

"Regular occupation" means the Insured's occupation at the time the Elimination Period begins. If the Insured engages primarily in a professionally recognized specialty at that time, his occupation is that specialty.

"Preexisting condition" means an injury or sickness suffered by the Insured which exists on the effective date of the coverage and, during the past five years, either:

1. was diagnosed;

2. caused the Insured to receive medical advice or treatment; or

3. caused symptoms for which an ordinarily prudent person would have sought medical advice or treatment.

"CPI-U" means the Consumer Price Index for All Urban Consumers published by the Bureau of Labor Statistics or its successor. We may choose another nationally published index if the CPI-U is replaced or changed. If the new or revised index is proportionate to the CPI-U, we will use the new index. Otherwise, we will choose the index which, in our judgment, most closely reflects the change in the cost of living in the United States. If the change is subject to government approval, we will obtain it before we use the new or revised index.

"CPI-U Factor" means, during each year of disability, the ratio of the Current Index to the Base Index. A year of disability is from one anniversary of the beginning of disability to the next.

"Base Index" means the last CPI-U index published in the calendar year before disability begins.

"Current Index" means the last CPI-U index published in each calendar year after the disability begins.

## BENEFITS

**Disability Benefit.** We will pay the Monthly Benefit Amount in any month after the Insured has satisfied the Elimination Period that:

1. the Insured is totally disabled or the Insured is residually disabled and experiences at least a 20% loss of net income in his regular occupation as a result of a present injury or sickness;

2. the injury or sickness which causes the loss of net income is the one which caused him to satisfy the Elimination Period;

3. he is receiving medical care from someone other than himself which is appropriate for the injury or sickness; and

4. benefits under the Disability Benefit and the Loss of Use Benefit combined have not been paid for the Maximum Benefit Period.

After disability ceases, resumption of this Disability Benefit is subject to the preceding requirements and those stated in the Successive Disabilities provision.

**Monthly Benefit Amount.** If the Insured is totally disabled or if the Insured's loss of net income is 75% or more, we will pay the Maximum Disability Benefit for that month. Whenever the loss of net income is less than 75% but at least 20%, the amount payable will be determined by the following formula:

loss of net income x Maximum Disability Benefit
prior net income

During the first six months that we pay the Disability Benefit, as a result of a residual disability, we will pay one-half of the Maximum Disability Benefit rather than the amount due under this formula if the Insured's loss of net income is from 20% to 50%.

**Benefit for Loss of Use.** Limited by the Maximum Benefit Period, we will pay the Maximum Disability Benefit monthly while an injury or sickness causes the Insured the total loss of use of:

1.  speech, hearing in both ears, or sight in both eyes; or

2.  one hand and one foot; or

3.  both hands; or

4.  both feet.

We will pay this benefit from the date of loss.

After disability ceases, resumption of this Loss of Use Benefit is subject to the preceding requirements and those stated in the Successive Disabilities provision.

**Successive Disabilities.** A period of disability which follows a past period of disability will be considered a separate period of disability only if the subsequent period of disability is:

1.  caused by a different injury or sickness than the one which caused the past period of disability; or

2.  separated from the past period of disability by at least six months during which the Insured is able to return to work full time in his regular occupation.

Any such separate period of disability will be considered a new disability; it will be subject to its own Elimination Period and Maximum Benefit Period. Any other subsequent period of disability will be considered an extension of the past period of disability.

**Waiver of Premium.** After disability has lasted for ninety days while this policy is in effect, we will waive the premium as long as the Insured is unable to return to work full time in his regular occupation as a result of the injury or sickness which causes the disability. We will refund premium already paid for that period on a pro rata basis.

**Benefit Indexing Provision.** On each policy anniversary until the policy anniversary when the Insured's age is 55, except during disability, you will automatically have the opportunity to increase the Maximum Disability Benefit by the Indexed Amount provided that:

1.  on each fifth policy anniversary, we determine based on evidence submitted that the Insured's total coverage then in effect does not exceed our issue and participation limits for the income which he is then earning; and

2.  you have not refused the opportunity to increase the Insured's coverage in two consecutive years.

If you can not automatically increase the Maximum Disability Benefit because the Insured did not satisfy provision (1) above, you still may increase the Maximum Disability Benefit by the Indexed Amount on any subsequent policy anniversary until the policy anniversary when the Insured's age is 55, except during disability, if on that date the income which he is then earning qualifies him for the increase.

When the opportunity is made available, you may increase the Insured's Maximum Disability Benefit by paying the premium for the increased amount. The premium will be based on his age on that policy anniversary and the premium rate then in effect for this plan. The Maximum Benefit Period, Elimination Period and plan will be the same as for the coverage which is indexed.

**Indexed Amount.** The increase available each year will be the percent change in the CPI-U between November 30 in the previous calendar year and November 30 of the calendar year before that one or 8%, whichever is smaller, times the current Maximum Disability Benefit for the policy. If the change in the CPI-U is less than 4%, the increase available will be 4% of the current Maximum Disability Benefit.

**Transplant Donor Benefit.** Disability which results from the transplant of a part of the Insured's body to another person's body will be considered caused by a sickness.

**Rehabilitation.** While the Insured is receiving the Disability Benefit, you may request or we may suggest participation in a rehabilitation program designed to help him return to work. If we determine that such a program is appropriate, we will pay reasonable expenses for such items as tuition, books, training programs, or additional living expenses. The actual expenses covered and the terms of the plan will be subject to mutual agreement. Our agreement will be outlined in a written plan of rehabilitation. Benefits will continue as provided by this policy except if they are modified by the plan of rehabilitation.

## EXCLUSIONS AND LIMITATIONS

This policy does not pay benefits which are based on injury or sickness caused by war or an act of war, whether declared or undeclared.

**Preexisting Condition Limitation.** This policy does not pay benefits which are based on a preexisting condition if:

1. the preexisting condition is not disclosed or is misrepresented in the application; and

2. the preexisting condition impairs the Insured or causes a loss of use or other loss during the

first two years after the effective date of the coverage.

Benefits will not be paid if they are based on impairment or loss of use or other loss that began before the effective date of the coverage.

**Multiple Benefits.** The Disability Benefit or Loss of Use Benefit payable in any month shall not exceed the Maximum Disability Benefit. In any month that the Loss of Use Benefit is paid, no Disability Benefit will be paid.

## CLAIM INFORMATION

**How to File a Claim.** To make a claim under this policy, the following steps must be taken:

1. give Notice of Claim (someone must notify us that disability has started as defined in this policy);

2. file Proof of Loss (the Insured, or someone acting in his behalf, and his attending physician must complete and return the claim form provided by us);

3. promptly complete and return any other forms we require; and

4. the Insured undergoes a medical examination or a personal interview as often as we reasonably request while the claim is pending. We reserve the right to select the examiner. We will pay for the examination.

EP87                Page 9

We will evaluate the claim and either:

1. pay the benefits specified in the policy; or

2. notify the Insured and any Loss Payee that benefits are not payable and why. If we need more information, we will tell the Insured and any Loss Payee what we need.

**Conditions and Time Limits.** In order for benefits to be payable, there are some conditions and time limits which each of us must meet. They are:

1. We must be given the Notice of Claim within 30 days after the Elimination Period begins, or as soon as reasonably possible.

2. We will furnish claim forms within 15 days after we receive written Notice of Claim. If the forms are not received within 15 days, send us proof of what happened and the extent of the sickness or injury.

3. The claim forms and other information requested by us (Proof of Loss) must be furnished to us within 90 days after each month for which a benefit is payable. However, failure to furnish such proof within 90 days will not reduce or nullify the claim if proof is furnished as soon as reasonably possible within one year after the 90 days. If the Insured is legally unable to notify us, the one year limit does not apply.

4. We must be given the information which we need to determine if a benefit is payable and how much that benefit should be. We may require relevant portions of income tax returns for the Insured or his business, income statements, vouchers for overhead expenses, and other statements or reports of receipts and payments. We may also require evidence that the Insured was liable for an overhead expense before disability began.

**How and When We Pay Benefits.** We will pay benefits due under this policy in United States dollars. We will not pay any benefit until we have sufficient Proof of Loss. When we have determined that the claim is payable, we will pay according to the Benefits provision. If any amount is accrued and unpaid when our liability terminates, we will pay it immediately.

We will pay all benefits to the Loss Payee if living, otherwise we will pay you. If you die while you are entitled to receive benefits, we will pay any remaining benefit and any unearned premium to your estate.

## CHANGE OF PLAN PROVISION

This policy may be exchanged for any other disability income policy issued by us when the exchange is made, subject to underwriting guidelines then in effect, provided:

1. the Insured is not disabled;

2. he is able to work full time in his regular occupation and is doing so; and

3. the request is made before the policy anniversary when his age is 55.

The Insured, amount, Maximum Benefit Period and Elimination Period will be the same as for this policy. Any rider attached to this policy when you exchange it may be continued on the new policy if it is available with that policy. The new policy will exclude any condition excluded by this policy.

The premium for the new policy will be based on the Insured's premium class and age on the effective dates of the coverages exchanged and his regular occupation on the date the exchange is effective.

If your request is approved, the new policy will be effective as of the date we receive the request to exchange policies.

## GENERAL PROVISIONS

**The Contract.** This policy represents the entire contract between you and us. Statements by agents or brokers are not part of our contract. Only an executive officer of this Company can approve a change in this policy. The approval must be in writing and be endorsed on or attached to this policy. No one else can change this policy or waive any of its conditions.

Unless we tell you something else, years, months and anniversaries that we refer to are calculated from the Policy Date shown on page 3.

**Incontestable.** We will not contest a coverage provided under this policy based on information given in the application for that coverage after that coverage has been in effect during the Insured's lifetime for two years from the effective date of that coverage, excluding any period during which the Insured is impaired or suffers a loss of use or other loss. In no event will we contest a coverage more than three years from the effective date of that coverage.

If impairment or loss of use or other loss begins after a coverage has been in effect during the Insured's lifetime for two years from the effective date of that coverage, we will not reduce or deny a claim which is based on that impairment or loss of use or other loss because of a preexisting condition unless the condition is excluded from coverage by name or description.

"Contest" means that we question the validity of coverage under this policy by letter to you. This contest is effective on the date we mail the letter and refund the premium to you.

**Conformity with State Statutes.** If any provision of this policy conflicts with the statutes of the state where the Insured resides on the effective date of that provision, it is amended to conform with the minimum requirements of those statutes.

**Legal Actions.** No one may start legal action to recover on this policy until 60 days after written Proof of Loss has been given to us. Legal action must be started within three years after the written Proof of Loss is required to be furnished.

**Misstatement of Age.** If the Insured's age has been misstated, any benefit payable will be changed to the amount which the premium paid would have bought for the correct age.

If we accept premium for a coverage which we would not have issued or which would have ceased according to the correct age, our only liability is to refund the premium for the period not covered.

**Owner.** You own this policy. You have all of the rights and privileges granted by this policy while it is in effect. Some of your ownership rights are:

1.  the right to continue or terminate this policy;

2.  the right to name someone else (a Loss Payee) to receive the benefits of this policy;

3.  the right to suspend this policy while the Insured is in military service; and

4.  the right to assign any or all rights under this policy.

You may reduce the Maximum Disability Benefit at any time. Premium will be recomputed for the reduced amount based on the Insured's age and premium class on the effective dates of the coverages. The reduction will be effective on the date we receive your written request at our Home Office.

**Loss Payee.** If you decide to have someone else receive policy benefits, you must notify us in writing on a form satisfactory to us. The notice will be effective when we receive it at our Home Office.

**Assignment.** You may assign any or all ownership rights to someone else. The assignment must be in writing and must specify the rights which are assigned and for how long. The Loss Payee is not changed by an assignment unless the assignment specifically names a new Loss Payee.

No assignment is binding on us until the original or an acceptable copy is received at our Home Office. We are not responsible for the validity or effect of any assignment.

UNUM® Insurance Company of America
A Stock Insurance Company
Portland, Maine 04122

### LIFETIME ACCIDENT BENEFIT RIDER

This rider is part of the policy to which it is attached. This benefit is subject to the terms and conditions of this rider and the rest of this policy.

This rider becomes effective on the later of the Effective Date of the policy or the Rider Date shown on Page 3 of the policy.

Premiums for this benefit are shown in the rider description on Page 3 of the policy. They are payable until the policy anniversary when the Insured's age is 65 at the same time and under the same conditions as premiums for the policy.

### DEFINITIONS

When used in this rider only:

"Total disability" and "totally disabled" mean

1. injury restricts the Insured's ability to perform the material and substantial duties of his regular occupation to an extent that prevents him from engaging in his regular occupation; and

2. the Insured is receiving medical care from someone other than himself which is appropriate for that injury

Except for "total disability" and "totally disabled," all terms used in this rider which are defined in this policy shall have the meaning given to them in the policy.

### BENEFITS

On the later of the policy anniversary when the Insured's age is 65 or the end of the Maximum Benefit Period, the Disability Benefit Provision is amended to read as follows:

We will pay the Maximum Disability Benefit in any month after the Insured has satisfied the Elimination Period that:

1. the Insured is totally disabled; and

2. that total disability:

   a. is the result of injury which occurred before the policy anniversary when his age was 65 and while this rider was in effect; and

   b. began before the policy anniversary when his age was 65 and has been continuous until the month for which this benefit is payable.

LA86

## TERMINATION

Coverage terminates on the policy anniversary when the Insured's age is 65. However, if the Insured is totally disabled at that time, the Benefit provision of this rider will apply on that date or at the end of the Maximum Benefit Period if later.

Signed for us at our Home Office on the effective date of this rider.

*Kevin J. Turney*

Secretary

**UNUM.** ®

UNUM Life Insurance Company of America
A Stock Insurance Company
Portland, Maine 04122

## NONDISABLING INJURY BENEFIT RIDER

This rider is part of the policy to which it is attached. The benefit provided by this rider is subject to the terms of this rider and the rest of this policy.

This rider becomes effective on the later of the Effective Date of the policy or the Rider Date shown on page 3 of the policy.

Premiums for this benefit are shown in the rider description on page 3 of the policy. They are payable at the same time and under the same conditions as premiums for the rest of this policy.

## DEFINITIONS

All terms used in this rider which are defined in the policy shall have the meaning given to them in the policy.

## NONDISABLING INJURY BENEFIT

If the Insured is injured by an accident which occurs while this rider is in effect and before the policy anniversary when his age is 65, we will pay the total amount of any outpatient expense for medical care that he incurs within 90 days of that accident if:

1. that expense was to treat injuries caused by that accident;

2. that accident does not cause disability; and

3. that outpatient expense plus all prior outpatient expenses incurred in connection with that same accident do not exceed the amount shown in the rider description on page 3.

If the Insured is injured by an accident which occurs while this rider is in effect and on or after the policy anniversary when his age is 65, we will pay the total amount of any outpatient expense for medical care that he incurs within 90 days of that accident if:

1. that expense was to treat injuries caused by that accident;

2. that accident does not cause disability; and

3. that outpatient expense plus all prior outpatient expenses incurred in connection with that same accident do not exceed one-half of the amount shown in the rider description on page 3.

## LIMITATIONS

If outpatient expenses otherwise covered by this rider also are payable in whole or in part by a State or Federal Workers' Compensation Law or Act, we will reduce the amount otherwise owed under this rider by the benefits payable by such Law or Act.

NDI86

## TERMINATION

This rider terminates at the earliest of:

1. your request; or

2. the date the policy terminates.

Signed for us at our Home Office on the effective date of this rider.

*Kevin J. Tierney*

Secretary

UNU... .e Insurance Company of America
A Stock Insurance Company
Portland, Maine 04122

## COST OF LIVING ADJUSTMENT RIDER

This rider is part of the policy to which it is attached. The rights provided by this rider are subject to the terms and conditions of this rider and the rest of the policy.

This rider becomes effective on the later of the Effective Date of the policy or the Rider Date shown on page 3 of the policy.

Premiums for this rider are shown in the rider description on page 3 of the policy. They are payable until the policy anniversary when the Insured's age is 65 at the same time and under the same conditions as premiums for the policy.

## DEFINITIONS

When used in this rider only:

"Current Index" means the last CPI-U index published in the calendar year before each payment is made.

"Prior Index" means the last CPI-U index published in the year before the Current Index was published.

"The Change in The Index" means the Current Index minus the Prior Index.

"CPI-U Factor" means, during each year that the Insured is disabled, the ratio of the Change in the Index to the Prior Index except that in no event will the CPI-U Factor be less than 4% or more than the Maximum COLA Percentage in effect when disability began.

"Disability" and "disabled" mean the period while the Insured is satisfying the Elimination Period, or while benefits are payable.

"Maximum COLA Percentage" means the percentage which is shown in the rider description on page 3.

"COLA Increase Percentage" means the percentage which is available to be purchased. It is shown in the rider description on page 3.

"Cost of Living Adjustment" means the product of the Maximum Disability Benefit in effect on the first day of disability and the CPI-U Factor.

All other terms used in this rider which are defined in the policy shall have the meaning given to them in the policy.

## COST OF LIVING ADJUSTMENT

On each anniversary of the first day of a period of disability which began while this rider was in effect, we will increase the Maximum Disability Benefit by the Cost of Living Adjustment for the purpose of determining benefits which may be payable elsewhere under this policy if:

1. the Insured is disabled;

2. the disability is caused by an injury that occurs, or by a sickness that begins, after this rider became effective; and

3. the policy anniversary when his age is 65 has not occurred.

When disability ceases, the Maximum Disability Benefit will be the Maximum Disability Benefit in effect on the first day of that period of disability.

If the Insured is disabled on the policy anniversary when his age is 65, future payments for that disability will be based on the Maximum Disability Benefit in effect on that policy anniversary.

**Successive Disabilities.** If disability begins again within one year after a period of disability, the Cost of Living Adjustment will be calculated as if disability had been continuous.

CLS86

# RIGHT TO PURCHASE INCREASES

While this rider is in effect, you may purchase additional coverage if:

1. the Maximum Disability Benefit has been adjusted as provided above;

2. the Insured is not disabled;

3. the Insured is able to work full time in his regular occupation; and

4. you apply within 90 days after the disability ceases and before the policy anniversary when the Insured age is 60.

Additional coverage purchased under this rider is subject to the following terms:

1. The maximum amount of additional coverage will be the difference between the Maximum Disability Benefit as increased by the Cost of Living Adjustment when the disability ended and the Maximum Disability Benefit when the disability began.

2. The additional coverage will be effective on the later of the date of application or the date the premium is paid.

3. Premiums will be based on the Insured's age on the date the additional coverage is effective.

4. If disability begins after the additional coverage is effective and within one year after the prior period of disability ended, the Maximum Disability Benefit used to calculate future Cost of Living Adjustments will be increased by the amount of additional coverage purchased.

5. The additional coverage added to this policy will have the same Maximum Benefit Period and Elimination Period as this policy. You may also increase any riders that are on this policy if permitted by our usual underwriting rules and limits.

## RIGHT TO INCREASE MAXIMUM COLA PERCENTAGE

You may increase the Maximum COLA Percentage by purchasing any unused portion of the COLA Increase Percentage shown on page 3 if:

1. you apply for the increase and pay the premium for it during the last 60 days before a policy anniversary;

2. you apply before the policy anniversary when the Insured's age is 60; and

3. you furnish us evidence of the Insured's insurability if you apply to purchase more than 4%.

The increase will be subject to the following terms:

1. The increase will be effective on the policy anniversary following the date you apply for it.

2. The premium for the increase will be based on the Insured's attained age on the date the increase becomes effective.

3. The increase will not apply to a disability which exists when the increase becomes effective or to a period of disability which is a continuation of a prior period of disability as described in the Successive Disabilities provision of the policy.

## TERMINATION

This rider will terminate on the earliest of:

1. the policy anniversary when the Insured's age is 65 except with respect to a disability which exists on that policy anniversary;

2. the date we receive your request to terminate this rider; or

3. the date the policy terminates.

Signed for us at our Home Office on the effective date of this rider.

*Kevin J. Tierney*

Secretary

**UNUM**®
UNUM Life Insurance Company of America
A Stock Insurance Company
Portland, Maine 04122

## LIFETIME SICKNESS BENEFIT RIDER
**(Payable for sickness which begins before the policy anniversary when the
Insured's age is 55)**

This rider is part of the policy to which it is attached. This benefit is subject to the terms and conditions of this rider and the rest of this policy.

This rider becomes effective on the later of the Effective Date of the policy or the Rider Date shown on Page 3 of the policy.

Premiums for this benefit are shown in the rider description on page 3 of the policy. They are payable until the policy anniversary when the Insured's age is 55 at the same time and under the same conditions as premiums for the policy.

### DEFINITIONS

When used in this rider only:

"Total disability" and "totally disabled" mean:

1.  sickness restricts the Insured's ability to perform the material and substantial duties of his regular occupation to an extent that prevents him from engaging in his regular occupation; and

2.  the Insured is receiving medical care from someone other than himself which is appropriate for that sickness.

### BENEFITS

Beginning on the policy anniversary when the Insured's age is 65, the Disability Benefit provision is amended to read as follows:

> We will pay the Maximum Disability Benefit in any month after the Insured has satisfied the Elimination Period that:
>
> 1.  the Insured is totally disabled; and
>
> 2.  that total disability:

a.  is the result of sickness which began before the policy anniversary when his age was 55 and while this rider was in effect; and

b.  his total disability began before the policy anniversary when his age was 55 and has been continuous until the month for which his benefit is payable;

### TERMINATION

Coverage terminates on the policy anniversary when the Insured's age is 55. However, if the Insured is totally disabled at that time, the Benefits provision of this rider will apply beginning on the policy anniversary when the Insured's age is 65.

Signed for us at our Home Office on the effective date of this rider.

*Kevin J. Tierney*

Secretary

LS5586

**UNITED STATES
DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

# 148696     — SH
* * C O P Y * *
March 12, 2008
12:29:05

**Civ Fil Non-Pris**
USAO #.: 08CV0459
Judge..: WILLIAM Q HAYES
Amount.:                    $350.00 CK
Check#.: BC20255


**Total—>   $350.00**


FROM: SCHECHTER V. UNUM LIFE INS

JS 44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

## I. (a) PLAINTIFFS

EDWARD L. SCHECHTER

**DEFENDANTS**

UNUM LIFE INSURANCE COMPANY OF AMERICA
and DOES 1 - 10

FILED
08 MAR 12 PM 12: 23
CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  Unknown
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Levine, Steinberg, Miller & Huver
550 West C Street, Suite 1810

San Diego, CA  92101
619-231-9449

ATTORNEYS (IF KNOWN)

'08 CV 459  WQH LSP

## II. BASIS OF JURISDICTION (PLACE AN "X" IN BOX ONLY)

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [X] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR
(For Diversity Cases Only)   PLAINTIFF AND ONE BOX FOR DEFENDANT)

|  | PT | DEF |  | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X] 1 | [ ] 1 | Incorporated or Principal Place of Business in This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business in Another State | [ ] 5 | [X] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)   28 U.S.C. Section 1332.  Plaintiff claims
breach of contract and declaratory relief.

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [X] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reappointment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 382 Personal Injury - Medical Malpractice | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal 28 USC 157 | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 365 Personal Injury - Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881 | | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 630 Liquor Laws | **PROPERTY RIGHTS** | [ ] 450 Commerce/ICC Rates/etc. |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | [ ] 640 R.R. & Truck | [ ] 820 Copyrights | [ ] 460 Deportation |
| [ ] 151 Medicare Act | [ ] 340 Marine | **PERSONAL PROPERTY** | [ ] 650 Airline Regs. | [ ] 830 Patent | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 345 Marine Product Liability | [ ] 370 Other Fraud | [ ] 660 Occupational Safety/Health | [ ] 840 Trademark | [ ] 810 Selective Service |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | [ ] 690 Other | **SOCIAL SECURITY** | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | **LABOR** | [ ] 861 HIA (1395ff) | [ ] 875 Customer Challenge 12 USC 3410 |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | [ ] 710 Fair Labor Standards Act | [ ] 862 Black Lung (923) | [ ] 891 Agricultural Acts |
| [ ] 195 Contract Product Liability | | | [ ] 720 Labor/Mgmt. Relations | [ ] 863 DIWC/DIWW (405(g)) | [ ] 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 730 Labor/Mgmt. Reporting & Disclosure Act | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motion to Vacate Sentence | [ ] 740 Railway Labor Act | [ ] 865 RSI (405(g)) | [ ] 894 Energy Allocation Act |
| [ ] 220 Foreclosure | [ ] 442 Employment | **HABEAS CORPUS:** | [ ] 790 Other Labor Litigation | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ Accommodations | [ ] 530 General | [ ] 791 Empl. Ret. Inc. Security Act | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 900 Appeal of Fee Determination Under Equal Access to Justice |
| [ ] 240 Torts to Land | [ ] 444 Welfare | [ ] 535 Death Penalty | | [ ] 871 IRS - Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 245 Tort Product Liability | [ ] 440 Other Civil Rights | [ ] 540 Mandamus & Other | | | [ ] 890 Other Statutory Actions |
| [ ] 290 All Other Real Property | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Conditions | | | |

## VI. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- [X] 1 Original Proceeding
- [ ] 2 Removal from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [X] YES  [ ] NO

## VIII. RELATED CASE(S) IF ANY (See instructions):

JUDGE                    Docket Number

DATE
March 10, 2008

SIGNATURE OF ATTORNEY OF RECORD
Harris I. Steinberg

::ODMA\PCDOCS\WORDPERFECT\22816\1 January 24, 2000 (3:10pm)

SE1148696 $350 23/12/08